**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

JIMMY ELDON SIMS,                          )
                                           )
       Petitioner,                     )
                                           )
v.                                         )          Case No. CIV-13-368-F
                                           )
TRACY MCCOLLUM, Warden,                    )
                                           )
       Respondent.                     )

## REPORT AND RECOMMENDATION

Petitioner, Jimmy Eldon Sims, appearing pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Doc. No. 1] challenging the constitutionality of his state court conviction. Respondent has filed a Response [Doc. No. 13], and at the direction of the Court, a Supplemental Response. [Doc. No. 27]. Petitioner has filed a Reply [Doc. No. 18], and a Supplemental Reply. [Doc. No. 29]. The matter has been referred by United States District Judge Stephen P. Friot for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Petition be denied.

### I.    Factual Background[1]

On August 20, 2008, Felipe Garza (Garza) arrived at his home to find a PT Cruiser with two men inside pulling up near his residence. Garza saw the driver get out and urinate in front of the home across the street where Timothy Smith (Smith) lived. Garza went into his garage but soon re-emerged. When he came back out, he saw the driver hitting Smith with a vacuum cleaner while the passenger was sitting on Smith's chest also hitting Smith.

---

[1] This statement of facts is intended only to provide general background for Petitioner's claims, and is taken from Petitioner's brief on direct appeal.

Smith testified he was vacuuming his house when he heard a knock on the door. Petitioner and his co-defendant, James Turley, (Turley) were at the door, and Smith let them in the house. He claimed that Petitioner then pushed him down on the couch, while Turley started carrying things out of the house. He claimed that Turley started hitting him, and that Petitioner hit him with the vacuum cleaner, perhaps a big screen television, an oscillating fan, and a wooden claw hammer.

Garza called 911, and Officer Venters (Venters) responded. He went across the street to Smith's house and found Smith with severe injuries. He learned from Smith that Petitioner and Turley were likely at a house located at 33rd and South Western in Oklahoma City. Following this lead, Venters drove to that location and found Petitioner in the front yard covered in blood. After verifying Petitioner's name was the same as the name the victim had given him, Officer Venters placed Petitioner in the back of his patrol car. Venters went inside the house where Petitioner had been found to talk to Detective Pena. When he returned to his patrol car, Petitioner was gone. The next day, police went to an address where Petitioner had stayed and found him hiding under a bed. He was arrested and later charged with two felonies in connection with the robbery of Smith.

## II.    Procedural Background

In Case No. CF-2008-5008, District Court of Oklahoma County, State of Oklahoma, (trial court), Petitioner was convicted of First Degree Robbery After Former Conviction of a Felony and was sentenced to twenty years' imprisonment. Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA), Case No. F-2009-347, raising the following five grounds for relief: (1) allowing the introduction of the recording of Garza's 911 call to the police violated Petitioner's right to be confronted by his accuser in open court, and trial counsel

was ineffective in failing to object to the admission of the recording; (2) Petitioner's rights under the prophylactic rule set forth in *Miranda v. Arizona* were violated; (3) the evidence is insufficient to support the conviction on a charge of robbery; (4) the trial court erred in allowing the admission of hearsay evidence; and (5) the trial court erred in allowing the admission of gruesome photographs of the victim. [Doc. No. 13-1]. The OCCA affirmed Petitioner's conviction on April 13, 2011. [Doc. No. 13-3].

Petitioner filed his first application for post-conviction relief on March 29, 2012, but the trial court struck the pleading for failure to follow procedural rules. [Doc. No. 13-5] at 2. On April 5, 2012, Petitioner filed a second Application for Post-Conviction Relief raising eight claims not previously asserted on direct appeal, including an ineffective assistance of appellate counsel claim: (1) the trial court lacked jurisdiction to enhance Petitioner's sentence because no certified copies of the judgments and sentences relied on were presented at preliminary hearing or were included in the bind-over order; (2) the trial court failed to adequately inquire into jury bias, thereby violating Petitioner's Due Process Right to an impartial jury; (3) the trial court erred in failing to give jury instruction OUJI CR-9-20, instructing the jury on evidence of impeachment by prior inconsistent statement; (4) prosecutorial misconduct denied Petitioner Due Process and a fair trial; (5) the trial court erred in waiting to merge the two counts against him until after the jury reached a verdict; (6) cumulative error deprived Petitioner of a fair trial; (7) trial counsel was ineffective; and (8) appellate counsel was ineffective in failing to raise the previous seven claims on direct appeal. [Doc. No. 21-1].

The trial court denied the application for post-conviction relief on July 24, 2012, [Doc. No. 13-5], finding Petitioner had waived the first seven grounds for relief by failing to raise them on direct appeal. The trial court acknowledged the ineffective assistance of appellate counsel

claim had not been waived because a post-conviction action is the first opportunity for a petitioner to assert such a claim. [Doc. No. 13-5]. The trial court identified the correct standard for reviewing claims of ineffective assistance of appellate counsel, [Doc. No. 13-5], and denied the claim on the merits without discussion of the underlying claims. *Id.* at 3.

On post-conviction appeal, the OCCA affirmed the district court's denial of Petitioner's first seven claims that Petitioner had waived. [Doc. No. 13-7]. As to Petitioner's claim of ineffective assistance of appellate counsel, the OCCA found Petitioner had forfeited that claim on post-conviction appeal by submitting a deficient brief: "Petitioner's post-conviction appeal brief herein is little more than a word-for-word recitation of those allegations and arguments contained in his Application for Post-Conviction relief." [Doc. No. 18-3] at 7-8. The OCCA held that Petitioner had failed to "rebut the presumption of correctness given to trial court proceedings" as well as having failed to "demonstrate on appeal how the [trial court's] resolution of his claims was erroneous" or "prejudicial[.]" [Doc. No. 18-3] at 8.

## III.   Petitioner's Grounds for Federal Habeas Corpus Relief

In this federal habeas petition, Petitioner raises thirteen grounds for relief—all grounds raised in his direct appeal to the OCCA, as well as all of the claims first raised in his application for post-conviction relief. [Doc. No. 1] at 5-24.

## IV.   Grounds Raised on Direct Appeal

Petitioner's grounds for relief raised on direct appeal are subject to review under the standards set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, this Court may grant a Petitioner habeas relief only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not the reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result—not its rationale—is 'legally or factually unreasonable.'").

Whether the law is clearly established is a threshold inquiry. *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (10th Cir. 2008). The absence of clearly established federal law is dispositive of the § 2254(d)(1) analysis. *Id.* at 1017. Thus, only if the court determines that the law is clearly established does it proceed to determine whether the state court decision is either contrary to or an unreasonable application of that law. *Id.* at 1018.

A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. *Williams v. Taylor*, 529 U. S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010).

A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts in the Petitioner's case. *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

5

law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*,

529 U.S. at 411.

### A.    Ground One: Introduction of the 911 Recording

On direct appeal, Petitioner argued that introduction of the 911 recording of Garza's call

for emergency assistance violated Petitioner's rights under the Confrontation Clause. Petitioner

further argued that trial counsel rendered ineffective assistance of counsel by failing to object to

the introduction of this evidence. [Doc. No. 13-1] at 18-21. Respondent argues that in its

decision, the OCCA identified the correct legal standards governing these claims and reasonably

applied these standards. [Doc. No. 13] at 7-8.

### 1.    Confrontation Clause

The OCCA reviewed this claim on the merits for plain error and denied relief:

> The introduction of the recording of the victim's neighbor's telephone call to 911
> for emergency assistance did not violate Sims' Sixth Amendment confrontation
> rights. The neighbor, whose voice was on the recording, testified at trial and was
> subject to cross-examination. His recorded statements were therefore
> admissible.... Additionally, the recorded statements of the 911 dispatcher were
> not testimonial in any sense of the word: i.e., they were not used to prove any
> matter at issue at trial.

[Doc. No. 13-3] at 2 (citations omitted). The OCCA's decision on this ground for relief was

neither contrary to, nor an unreasonable application of Supreme Court law.

The Sixth Amendment of the United States Constitution, as made applicable to the states

through the Fourteenth Amendment, guarantees an individual accused of a criminal offense the

right "to be confronted by the witnesses against him[.]" Const. amend. VI, XIV. In *Crawford v.

Washington*, the United States Supreme Court thoroughly examined the historical understanding

of the Sixth Amendment's Confrontation Clause and held the Confrontation Clause bars the

admission of testimonial hearsay unless "the declarant is shown to be unavailable," and then only

if the defendant "has had an earlier opportunity to cross-examine the declarant." *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

As the Tenth Circuit has observed, "[t]he Crawford decision marks a fundamental shift in the Supreme Court's Confrontation Clause jurisprudence." *United States v. Solomon*, 399 F.3d 1231, 1237 n. 2 (10th Cir. 2005). Prior to *Crawford*, the Confrontation Clause did not bar the admission of an unavailable witness's statements as long as those statements bore "adequate indicia of reliability," a test met when the evidence either fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Id.* (*citing Ohio v. Roberts*, 448 U.S. 56, 66 (1980). Pursuant to *Crawford*, however, the decisive issue is whether the hearsay statements are testimonial. If they qualify as testimonial, the fact that the statements may have been admissible pursuant to a hearsay exception is of no moment. *Crawford*, 541 U.S. at 68–69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").

The *Crawford* Court declined to give precise definition to "testimonial" hearsay. 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"). Nonetheless, the Court did provide "relevant guideposts to frame [the] analysis." *United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005). The Court determined that, at a minimum, testimonial hearsay includes "prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

The Supreme Court provided additional guidance as to what constitutes testimonial hearsay in *Davis v. Washington*, 547 U.S. 813 (2006). In *Davis*, the Court applied an objective test to determine whether police interrogation that took place in the course of a 911 call produced

testimonial statements. *Id.* at 827; *see also Summers*, 414 F.3d at 1302 (formulating an objective test for determining whether hearsay is testimonial; the test focuses on the reasonable expectations of the declarant that the statement may later be used at trial). The *Davis* Court concluded the circumstances of the interrogation indicated that the primary purpose of the witness's interrogation was "to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 828. Therefore, the statements were not testimonial. *Id.* As the Court explained, the declarant "simply was not acting as a witness; she was not testifying. What she said was not a 'weaker substitute for live testimony' at trial." *Id.* at 828 (emphasis in original) (*quoting United States v. Inadi*, 475 U.S. 387, 394 (1986)).

In *Davis*, the Court made express what was suggested in Crawford: the Confrontation Clause applies only to testimonial hearsay. 547 U.S. 824-25. The admission of non-testimonial hearsay statements, therefore, does not present a Confrontation Clause violation.

Here, the statements challenged by Petitioner are clearly not testimonial. The statements were made by the witness to the 911 dispatcher "to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 828. The circumstances of the statements made during the 911 call do not objectively indicate that the primary purpose of the statements was to establish or prove past events potentially relevant to later criminal prosecution. *Id.* at 822.

Furthermore, the OCCA's' decision that the Confrontation Clause is not implicated where the person who made the statements in question testified at trial is in accord with Supreme Court precedent:

> Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court statements "'cannot be replicated, even if the declarant testifies to the same matters in court.'" The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not

> bar the use of testimonial statements for purposes other than establishing the truth
> of the matter asserted).

*Crawford*, 541 U.S. at 59 n. 9.   (internal citation omitted).

The OCCA cited *Crawford v. Washington*, and properly applied Supreme Court law to this ground for relief.  As noted by the OCCA, the victim's neighbor, who made the emergency telephone call, was available for trial and did testify.  As *Crawford* made clear, under such circumstances even prior testimonial statements may be introduced into evidence. *Id.* at 59 n. 9. But in this case, as discussed above, the statements were not, in any event, testimonial.  Finally, any statements made by the dispatcher, as the OCCA noted, were not offered to prove the matter asserted and were not testimonial hearsay.  *See Davis*, 547 U.S. at 827 (questions asked and answered during 911 call were not testimonial because the questions were necessary to resolve a present emergency).

### 2.     Ineffective Assistance of Counsel

The Court reviews petitioner's claim of ineffective assistance of counsel under the familiar framework set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  Under that standard, to prevail on a claim of ineffective assistance of counsel, Petitioner must show both that his counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687–88; *accord Hooks v. Workman,* 606 F.3d 715, 723 (10th Cir. 2010).

This court's review of counsel's performance is "highly deferential." *Hooks,* 606 F.3d at 723.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Byrd v. Workman,* 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation omitted).  "To be deficient, the performance must be outside the wide range of professionally competent assistance.  In other words, it must

have been completely unreasonable, not merely wrong." *Hooks,* 606 F.3d at 723 (citations omitted) (internal quotation marks omitted); *accord*, *Gardner v. Galetka,* 568 F.3d 862, 874 (10th Cir. 2009). "The Supreme Court requires [the court] to make 'every effort ... to eliminate the distorting effects of hindsight' by indulging in a strong presumption counsel acted reasonably." *Strickland,* 466 U.S. at 689. Petitioner bears a heavy burden of overcoming the presumption that counsel's actions were sound trial strategy. *Byrd,* 645 F.3d at 1168.

Moreover, because this is a § 2254 proceeding, Petitioner faces an even greater challenge; this court defers not only to the attorney's decision as to how he could best represent his client, but also to the state court's determination that counsel's performance was not deficient. *Id.* at 1168. For that reason, this Court's review of a petitioner's habeas claim of ineffective assistance of counsel is "doubly deferential." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009).

Because the underlying claim based on *Crawford* is without merit, the OCCA reasonably concluded that trial counsel was not ineffective in failing to object to admission of the 911 recording. *See Snow v. Sirmons,* 474 F.3d 693, 724-25 (10th Cir. 2007) (trial counsel was not ineffective for failing to object to certain evidence which the OCCA found admissible).

Petitioner has failed to establish either a violation of his rights under the Confrontation Clause, or that his trial counsel was ineffective in failing to object to introduction of the 911 recording. Thus, it is recommended that relief on Ground One be denied.

## B.    Ground Two: *Miranda*[2] Violation

In his second ground for habeas relief, Petitioner contends that his constitutional rights under the Fourth and Fifth Amendments were violated when Officer Venters questioned him

---

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

after putting him in the back of Venter's patrol car; Petitioner claims that he was not Mirandized before being questioned, [Doc. No. 1] at 7, and that information gained from Petitioner at that time was used to locate his co-defendant, Turley, as well as the stolen car involved in the robbery. *Id.* He further claims the resulting evidence—the stolen car and the items found in it— was used to obtain his conviction. *Id.* at 8.

Respondent counters with Supreme Court precedent establishing that a violation of a defendant's *Miranda* rights is completely remedied by exclusion of the resulting statement—as was done in this case with regard to Petitioner's statements to Officer Venters. [Doc. No. 13] at 11-12. Thus, Respondent argues, the decision of the OCCA was neither inconsistent with nor an unreasonable application of Supreme Court precedent. *Id.* at 11.

On direct appeal, the OCCA stated: "Sims' un-*Mirandized* statements were suppressed by the trial court and were never presented to the jury. Given that all of the evidence against Sims was developed independently of those statements, suppression of that evidence as 'fruit of the poisonous tree' ... was unnecessary." [Doc. No. 13-3] at 3. The OCCA also found that suppression of the statement was a "complete and sufficient" remedy for the alleged *Miranda* violation. *Id.* (*citing United States v. Patane*, 542 U.S. 630, 643 (2004)).

The OCCA's decision is sound under established Supreme Court law. Where a defendant is not warned of his rights under *Miranda,* "[p]otential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, '[t]he exclusion of unwarned statements ... is a complete and sufficient remedy' for any perceived *Miranda* violation." *United States v. Patane,* 542 U.S. at 641-42 (*quoting Chavez v. Martinez,* 538 U.S. 760, 790 (2003)). Because Petitioner's statement to Venters was suppressed, it is recommended that relief be denied on Ground Two.

**C. Ground Three: Sufficiency of the Evidence**

The standard a state court must apply when reviewing a claim challenging the sufficiency of the evidence is clearly established in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* But it is not necessary or appropriate for this court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (internal quotation and citation omitted). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* If a defendant is found guilty of the crime charged, the jury's role as fact finder and weigher of the evidence is preserved "through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*

Under AEDPA, this Court must decide whether the OCCA's finding that there was sufficient evidence to support a jury's guilty verdict was contrary to or an unreasonable application of *Jackson*. *See* 28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238–39 (10th Cir. 2003). The Supreme Court has reiterated the difficulty a habeas Petitioner faces when asserting a ground for relief based on alleged insufficiency of the evidence:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas

review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Coleman v. Johnson*, __ U.S. __, 132 S. Ct. 2060, 2062 (2012) (citations omitted).

Regarding Petitioner's claim that the evidence was not sufficient to support a finding of guilt, the OCCA found as follows:

In light of the evidence presented at trial, this claim is frivolous. The evidence before the jury was more than sufficient to support a finding by any rational trier of fact that two or more people (i.e., Sims and his cousin Turley), wrongfully took and carried away the personal property of another by force or fear.

Response, Ex. 3 (ECF No. 13-3:4). The OCCA's conclusion that Petitioner's conviction was supported by substantial evidence is not contrary to, nor an unreasonable application of *Jackson*, and habeas relief is not warranted. In Oklahoma,

Whenever two or more persons conjointly commit a robbery or where the whole number of persons conjointly commits a robbery and persons present and aiding such robbery amount to two or more, each and either of such persons shall be guilty of a felony.

Okla. Stat. tit. 21, § 800. "Robbery" is defined as "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Okla. Stat. tit. 21, § 791.

Under the Oklahoma Uniform Jury Instructions, these two sections are combined to set forth the essential elements of robbery by two persons:

OUJI-CR 4-143

CONJOINT ROBBERY – ELEMENTS

No person may be convicted of conjoint robbery unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, wrongful;

Second, taking;

Third, carrying away;

Fourth, personal property;

Fifth, of another;

Sixth, from the person/(the immediate presence) of another;

Seventh, by force/fear; and

Eighth, committed by two or more persons.

OUJI-CR 4-143, (*citing* Okla. Stat. tit. 21, §§ 791, 800).

Here, the evidence included two eyewitness accounts—including that of the victim—a 911 recording, Petitioner's statement, and the testimony of two police officers. The eyewitness saw Petitioner and Turley arrive together, and saw the two men beating the victim and carrying his possessions to the PT Cruiser. He also saw that when the PT Cruiser would not start, Turley took the victim's car and pushed the PT Cruiser away. Officer Venters spoke to the victim right after the incident, and the victim was able to give the officer the names of the men who had robbed him—he also gave an address where the men could possibly be found.

Upon arriving at that address, Officer Venters saw Petitioner standing in the front yard, covered in blood. Moreover, the jury saw a videotaped police interrogation in which Petitioner admitted that he and Turley had fought with the victim.

The OCCA's decision is neither contrary to, nor an unreasonable application of *Jackson*, and habeas relief should be denied as to Ground Three.

### D. Ground Four: Admission of Officer Venter's Statements

In Ground Four, Petitioner claims that the trial court abused its discretion in admitting hearsay testimony from Venters establishing that Petitioner was a suspect. [Doc. No. 1] at 11.

Petitioner claims that the State "utilized passive voice answers in an attempt to get around the hearsay rule." *Id.* In particular, Petitioner refers to that part of Venters' testimony in which he stated that he was able to identify potential suspects and their location. [Doc. No. 18] at 10:

[DIRECT EXAMINATION BY COUNSEL FOR THE STATE]

Q. In talking with the victim, were you able to identify any potential suspects?

A. Yes, I was.

[defense counsel's objection as calling for hearsay response overruled]

Q. So, Officer, you were able to identify a suspect—or were you able to ascertain names of suspects?

A. Yes, I was.

. . .

Q. Officer, were you able to gather information about a possible location of the alleged suspects?

A. Yes, I was.

Q. And what location was that?

[defense counsel's objection as calling for hearsay response overruled]

. . .

Q. Where was that location?

A. 33rd and Western, south.

Trial Tr. at 77-78.

Respondent contends that questions relating to evidentiary rulings are a matter of state law and lie within the discretion of the state court. [Doc. No. 13] at 21. Respondent continues: unless the state court's error was "so grossly prejudicial that it fatally infected the trail and

denied the fundamental fairness that is the essence of due process" an evidentiary ruling will not be disturbed. *Id.* at 22. Respondent argues that under this standard, Petitioner's Fourth Ground does not raise a constitutional issue. *Id.* at 24.

On direct appeal, the OCCA held "Officer Venters' testimony that after he spoke to the victim he was able to identify potential suspects and determine their possible location at a specific address was not inadmissible hearsay." [Doc. No. 13-3] at 4. The OCCA based its conclusion on the fact that the statement in question was not offered for proof of the matter asserted. *Id.* at 5. Second, the OCCA found that the victim's statement was not an extrajudicial third-party identification because he did not point Petitioner out—he only provided a name and possible address. [Doc. No. 13-3] at 5. Finally, the court noted that officer Venters' testimony came after the victim had testified and made an in-court identification, making any error harmless. *Id.*

"[F]ederal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Hooks v. Workman*, 606 F.3d at 748. In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 67–68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary ... rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir. 1995) (*quoting Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint."

*Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (*quoting United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

After reviewing the record in this case, the undersigned finds that Petitioner has failed to demonstrate that introduction of Officer Venters' testimony regarding the name and possible location of Petitioner rendered the trial fundamentally unfair. As the OCCA noted, "Officer Venters' testimony came after the victim identified Sims in court as his attacker." [Doc. No. 13-3] at 5. Thus, even assuming that Officer Venters gave a hearsay response during his testimony, the admission of that evidence did not render Petitioner's trial, as a whole, fundamentally unfair. Accordingly, it is recommended that relief be denied on Ground Four.

### E.    Ground Five: Admission of Photographs

In Ground Five, Petitioner claims that photographs of the victim on a hospital gurney "sensationalized" the trauma. [Doc. No. 1] at 12. He claims that the photos were only used to inflame the jury, and that the offense of robbery by two or more persons does not require injury as an essential element of the crime. *Id.*

Respondent counters that the pictures reflected the results of the crime, and were necessary to prove the elements of intent and force. [Doc. No. 13] at 26. The photographs also were also relevant to Petitioner's story that the victim was the aggressor and that Petitioner never hit the victim with anything other than his hand. *See* Trial Transcript at 143.

On direct appeal, the OCCA stated:

> While the photographs of the bloodied victim that were admitted as evidence were certainly gruesome, their probative value in corroborating the victim's testimony about being struck with heavy objects by Sims, and refuting Sims' claims that he only used his fists, outweighed their prejudicial effect. Because the probative value of the photographs outweigh the danger of unfair prejudice, the trial court properly admitted them as evidence ....

[Doc. No. 13-3] at 6. The undersigned finds the OCCA's conclusion to be neither contrary to

nor an unreasonable application of established federal law.

As discussed above, federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights. *See e.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Thus, the issue is whether the admission of the photographs rendered the proceedings fundamentally unfair. *Jackson v. Shanks,* 143 F.3d 1313, 1322 (10th Cir. 1998) ("[D]ue process arguments relating to the admissibility of the victims' ... autopsy photos ... will not support habeas relief 'absent fundamental unfairness so as to constitute a denial of due process of law.'") (*quoting Martin v. Kaiser,* 907 F.2d 931, 934 (10th Cir. 1990)).

Petitioner has failed to demonstrate that the introduction of the photographs in question deprived him of a fundamentally fair trial. The photographs were relevant to the elements of "force or fear," as well as to Petitioner's description of the incident. While the photographs are gruesome, their probative evidence outweighed any danger of unfair prejudice. It is therefore recommended that relief be denied as to Ground Five.

## V.        **Procedurally Barred Claims**

The remaining grounds for relief in this habeas action were raised for the first time in Petitioner's application for post-conviction relief. The trial court denied Petitioner's application, and on post-conviction appeal, the OCCA found all claims to be procedurally barred from review based on the inadequacy of Petitioner's brief. Implicit in the OCCA's decision is a finding that Petitioner had not complied with the Rules of the Oklahoma Court of Criminal Appeals—rules that apply to all appellate briefs. *See* Okla. Stat. tit 22, ch. 18 app.

A federal habeas claim may be barred by a petitioner's procedural default in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "The [independent and adequate state ground] doctrine applies to bar

federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-730. The ground is considered "independent" if it relies on state law rather than federal law. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). To be "adequate," the law "must be applied evenhandedly in the vast majority of cases." *Id.*

In this case, the trial court reviewed Petitioner's application for post-conviction relief and determined the first seven propositions for relief were procedurally barred because they "could have been raised in his direct appeal but were not." [Doc. No. 13-5] at 2. The Tenth Circuit has recognized that Oklahoma's waiver rule is an independent and adequate state procedural bar. *See Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008); *Hale v. Gibson*, 227 F.3d 1298, 1330 (10th Cir. 2000).

Petitioner also raised an ineffective assistance of appellate counsel claim in his post-conviction application, based on appellate counsel's failure to raise on direct appeal the seven grounds for relief that were deemed waived by the trial court on post-conviction. The trial court noted Petitioner could not have raised this claim on direct appeal, and that the claim had not, therefore, been waived. [Doc. No. 13-5] at 2 The trial court briefly examined the claim under Oklahoma case law that embodied the cause-and-prejudice standards enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). The trial court correctly recited the *Strickland* standards and rejected the ineffective assistance of appellate counsel claim on the merits without further discussion.[3] The trial court did not address the merit—or lack of merit—of the omitted claims underlying Petitioner's contention that his appellate counsel rendered ineffective assistance on

---

[3] "Petitioner's application presents no grounds for requested relief, and the court finds that Petitioner's application is without merit." *Id.* at 3.

direct appeal. Nevertheless, under Supreme Court law, the trial court's finding that Petitioner's appellate counsel was not ineffective must be considered a decision on the merits of the claim:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington v. Richter*, 562 U.S. 86, 98 (2011).

On appeal, the OCCA affirmed the trial court's denial of post-conviction relief in Case No. PC-2012-738. [Doc. No. 18-3] (Order Affirming Denial of Post-Conviction Relief). In its Order, the OCCA determined all of Petitioner's claims raised on appeal of the trial court's denial of post-conviction relief, including his ineffective assistance of appellate counsel claim, were barred from appellate review based on Petitioner's failure to comply with the appellate court's procedural rules requiring adequate briefing of the issues on appeal:

> Petitioner's post-conviction appeal brief herein is little more than a word-for-word recitation of those allegations and arguments contained in his Application for Post-Conviction Relief that he presented to the District Court. The District Court resolved each of those allegations and arguments against Petitioner and found the claims contained in his Application (including those urging his appellate counsel was ineffective) presented no grounds for relief. It is therefore Petitioner's duty on appeal to rebut the presumption of correctness given to trial court proceedings and demonstrate on appeal how the District Court's resolution of his claims was erroneous, and if erroneous, how it was prejudicial and now requires reversal or modification.

*Id.* at 7-8.

Citing a state law case, the OCCA justified applying a procedural bar on post-conviction appeal by noting it was not the job of the court to "'comb the record or law looking for support for the applicant's claims.'" *Id.* at 9 (*quoting Logan v. State*, 293 P.3d 969, 979 (Okla. Crim. App. 2013).

In his Supplemental Response, [Doc. No. 27], Respondent argues persuasively that the OCCA has consistently required appellate briefs to comply with its rules and sufficiently support propositions raised. For example, Respondent cites *Colvert v. State*, an OCCA decision from 1969, to support the argument that the procedural bar in question has long and frequently been applied and is, therefore, an adequate procedural bar:

> Defendant fails to offer any authorities to support his next proposition, which asserts insufficiency of the evidence and passion and prejudice of the jury in assessing punishment. This Court has recited many times, as was said in *Collins v. State*, [407 P.2d 609, 610 (1965)]:
>
> > 'It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred.'

*Colvard v. State*, 453 P.2d 715, 720 (Okla. Crim. App. 1969).

Respondent also cites *Wallace v. State*, for the proposition that the OCCA has consistently required appellate briefs to conform to its rules:

> [T]his Court is under no obligation to review the entire record to find materials; if Petitioner deemed them important enough to incorporate into his Application, he should deem them important enough to warrant a specific reference; a "kitchen sink" reference is not sufficient. *See* Rules of the Court of Criminal Appeals, Rule 3.5, 22 O.S. Supp.1996, Ch. 18 App.

*Wallace v. State*, 935 P.2d 366, 370 n. 2 (Okla. Crim. App. 1997).

Indeed, Rule 3.5 of the Rules of the Oklahoma Court of Criminal Appeals establishes requirements for all appellate briefs, including the rules that (i) an appellant must set out "[e]ach proposition of error ... separately in the brief," Rule 3.5(A)(5); and (ii) any party filing a brief must "provide a reference to the pages of the record filed and the authorities relied upon in support of each point raised." Rule 3.5(C)(1). Although in this case, the OCCA did not

specifically cite to its rules governing requirements for appellate briefs, its decision is quite obviously based on briefing inadequacies consistent with Rule 3.5(C)(1).

The Tenth Circuit has apparently not addressed the adequacy of a procedural bar based specifically on Rule 3.5(C)(1). But the Tenth Circuit has repeatedly found that a petitioner's failure to follow the OCCA's procedural rules to be both independent and adequate to bar federal habeas review. For example, the Tenth Circuit has found that OCCA's Rule 3.5(A)(5) is an adequate and independent state procedural bar to habeas review. *See Cole v. Trammell*, 755 F.3d 1142, 1176 (10th Cir. 2014) (holding that the OCCA's failure to consider an appellate claim that was not separately raised constituted treatment "consistent with OCCA Rule 3.5(A)(5)" and rendered the claim "unexhausted" and thus procedurally barred for purposes of federal habeas review); *Dangerfield v. Hargett*, No. 94–6314, 1995 WL 307584, at *1–2 (10th Cir. May 11, 1995) (holding that claims rejected by the OCCA pursuant to Rules 3.5(A)(5) and 3.6 were procedurally barred on federal habeas review and noting that the state ground was "adequate" because the OCCA "has consistently dismissed claims for failure to properly file supporting citations and authority").

For these reasons, Petitioner's claims on post-conviction appeal are foreclosed from federal habeas review, *see Cole*, 755 F.3d at 1176; *Dangerfield*, 1995 WL 307584, at *3, unless Petitioner can demonstrate either: (1) cause for the default and actual prejudice, or (2) that a fundamental miscarriage of justice will result if Petitioner's claims are not considered. *See Coleman*, 501 U.S. at 750; *Hale*, 227 F.3d at 1330-31.

"Cause" under the cause-and-prejudice analysis "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 752.

In his Supplemental Reply, [Doc. No. 29], Petitioner correctly notes that ineffective assistance of appellate counsel can constitute "cause" for a petitioner's default, when the procedural bar applied is based on the Petitioner's failure to raise a claim on direct appeal. *Id.* at 8. In such a case, as Petitioner points out, the proper course of action for a federal habeas court would be to address the merits of the claim omitted on direct appeal to determine whether the petitioner was prejudiced by appellate counsel's failure to raise it. If a petitioner can establish prejudice, he is entitled to have his claim considered on federal habeas review. But in the instant case, the procedural bar was *not* based on failure to raise the claims on direct appeal but, rather, on Petitioner's failure to submit an appellate brief consistent with the OCCA's rules. Therefore, although Petitioner raised an ineffective assistance of appellate counsel claim that could have been considered "cause" for his failure to raise the preceding seven claims on direct appeal, Petitioner defaulted that claim, too, on an independent and adequate state law ground. Petitioner has alleged no facts to demonstrate his failure to adequately brief issues raised on post-conviction appeal was caused by "something external" to himself that he could not control. *Coleman*, 501 U.S. at 752.

Having failed to establish cause and prejudice to excuse his procedural default, Petitioner may obtain review of his defaulted claims only if he falls within the "narrow class of cases ... implicating a fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *see also*, *Schlup v. Delo*, 513 U.S. 298, 314 (1995).

A petitioner must support his claim of constitutional error with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. A Petitioner must then demonstrate that "in light of this new evidence, no juror, acting reasonably,

would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. In other words, Petitioner would have to demonstrate he is actually innocent of the crime for which he was convicted. *See Winston v. Martin*, 608 F. App'x 689, 689 (10th Cir. 2015) ("Critically, 'actual innocence means factual innocence, not mere legal insufficiency.'") (*quoting Bousley v. United States*, 523 U.S. 614, 615 (1998)); *see also Laurson v. Leyba*, 507 F.3d 1230, 1233 (10th Cir. 2007) (recognizing that "[a]ctual innocence means 'factual innocence'"); *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (defenses based on intoxication and self-defense speak to legal innocence not factual innocence). In this case, Petitioner makes no attempt to assert a claim of actual innocence. Having failed to demonstrate cause and prejudice for his procedural default or to state a claim of actual innocence, Petitioner's grounds for relief that were not raised on direct appeal are barred from habeas review.

## RECOMMENDATION

In sum, the grounds for habeas relief properly filed and exhausted by direct appeal to the OCCA are without merit. Habeas relief on these grounds should be denied. The remaining claims, first raised in Petitioner's application for post-conviction relief, are barred by an independent and adequate state law procedural default, and Petitioner has failed to establish cause and prejudice to excuse his procedural default or to present new evidence tending to demonstrate he is actually innocent of the crime for which he was convicted. It is therefore recommended that the Petition [Doc. No. 1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by June 2, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to

this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 12th day of May, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE